**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**
**TULSA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| Sanctuary Evangelistic Church, Inc. | ) | No.   12-12616 |
| | ) | Chapter 11 Small Business Case |
| | ) | |
| **DEBTOR** | ) | |

<u>**SANCTUARY EVANGELISTIC CHURCH, INC.'S**</u>
<u>**FIRST AMENDED DISCLOSURE STATEMENT, DATED 2/15/2013**</u>

Sanctuary Evangelistic Church, Inc., the Debtor in Possession, (the "Debtor" or "SEC") in the above styled cause, propose the following disclosure statement in support of its Chapter 11 Plan of Reorganization.

## INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Sanctuary Evangelistic Church, Inc. (the "Debtor").   This Disclosure Statement contains information about the Debtor and describes the Plan (the "Plan") filed by Sanctuary Evangelistic Church, Inc. on 1/21/2013.   A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.

***Your rights may be affected.   You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.   If you do not have an attorney, you may wish to consult one.***

The principal objective of a Chapter 11 bankruptcy case is the confirmation and consummation of a plan of reorganization.   A plan of reorganization sets forth the terms and means for treating creditors' claims against a debtor.   Once the bankruptcy court (the "Court") confirms a plan of reorganization, that plan becomes binding upon (i) the debtor, (ii) any person acquiring property under the Plan, and (iii) any creditor of the debtor.   Generally, an order of the Bankruptcy Court confirming a plan of reorganization discharges the debtor from any debt that arose prior to that confirmation date, and substitutes for that debt the new obligations specified in the confirmed plan.

The proposed distributions under the Plan are discussed in Section III. B and C of this Disclosure Statement.

A.     **Purpose of This Document**

In a Chapter 11 case, many creditors are given the opportunity to vote on the plan of

reorganization. An important factor in the Court's consideration of whether to confirm a plan of reorganization is the result of creditors' voting on whether or not to "accept" the plan of reorganization.

Before the Plan can be approved by the Court and before solicitations for acceptance of the Plan can be sought, the Debtor is required to submit to the holders of claims or interests in the Estate a document which has been approved by the Court as containing adequate information concerning the Plan.   Adequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of Debtor's operation and the condition of its books and records that would enable a hypothetical, reasonable investor typical of holders of claims or interests of the relevant classes to make an informed judgment about the Plan.   The Debtor has filed an election to be treated as a small business under 11 U.S.C. § 1121(e).   The Debtor has prepared this Disclosure Statement in accordance with the requirements of 11 U.S.C. § 1125.

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Court will consider when deciding whether to confirm the Plan,
- Why Sanctuary Evangelistic Church, Inc. believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

***Be sure to read the Plan as well as the Disclosure Statement.   This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.***

B.      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement.   This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.      ***Conditional Approval of Disclosure Statement.***

This Disclosure statement has been conditionally approved by the Court, subject to objection and a combined hearing on its adequacy and confirmation of the Plan.

2.      ***Time and Place of the Hearing to Confirm the Plan***

The hearing at which the Court will determine whether to confirm the Plan will be at a specific date and time in a separate attached order.

### 3.     *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Jerry L. Gunter, Winters & King, Inc., 2448 East 81st Street, Suite 5900, Tulsa, Ok 74137.   See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the time set by the court in the separate order or it will not be counted.

### 4.     *Deadline For Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan will be set for a specific date and time set by the court in a separate attached order.

### 5.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Jerry L. Gunter of Winters & King, Inc. by mail at 2448 East 81st Street, Suite 5900, Tulsa, OK 74137, or by telephone at (918) 494-6868, or by fax at (918) 491-6297 or by email at jgunter@wintersking.com.

### C.    Disclaimer

***The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.***
***The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***
***The Court's conditional approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.   Objections to the adequacy of this Disclosure Statement may be filed by the date stated in the separate attached order.***

### D.    Definitions

The following definitions apply to this Plan and Disclosure Statement exclusively.   Any terms used by this Plan defined by 11 U.S.C. §101 shall mean the same as defined by such section unless otherwise provided herein.   Any term or word defined herein shall have the meaning defined herein any time it is used in this Plan or Order Confirming this Plan whether or not such term or word shall be capitalized.

1.     **Administrative Bar Date**:    The day which will be fixed by this Plan as the last day for persons desiring to file an administrative priority claim pursuant to 11 U.S.C. §503 to do so.   Any party desiring to file an administrative claim must do so within 30 days of the Effective

Date of this Plan.    FAILURE TO TIMELY FILE SUCH CLAIMS WILL RESULT IN DENIAL OF THE CLAIM.

2.      **Allowed Claim**:    Allowed Claims shall be allowed in the amount set forth in the Debtor's schedules unless schedules as disputed, contingent or unliquidated.  If a claim is listed as "unknown" it shall be assigned a value of zero.  Allowed claims are also those claims of creditors who have timely filed Proofs of Claim and to which no objection is filed.    In the event of a difference between the claim scheduled by the Debtor and the Proof of Claim, the Proof of Claim filed by a creditor shall control unless the same is objected to by a party in interest.    If an objection is filed, the order disposing of such objection shall determine the allowed amount of the claim.   In the event a claim is to be objected to, the procedure provided for in this Plan shall control such proceedings.    Claims in Classes 1, 2, 3 and 4 shall be deemed allowed unless an objection to such claim is filed within 30 days after the Effective Date.

3.      **Claims Bar Date**:    The calendar date set by the Court as the last day for persons desiring to file a claim to do so.    Creditors holding Claims scheduled on the Debtor's schedules as disputed, contingent, unliquidated and "unknown" who fail to file a proof of claim by this date will not be paid any money.   Other scheduled claims will be deemed allowed as scheduled. Claims must be filed by the date set by the court as the claims bar date.

4.      **Confirmation**:    A judicial determination by the Court at the confirmation hearing to be set in the future that this Plan complies with the requirements of 11 U.S.C. §1129 and is therefore determined to be a confirmed Plan as that term is defined by the Bankruptcy Code.

5.      **Consummation of the Plan**:    Substantial consummation of this Plan shall occur upon the date when the first distribution is made under this Plan and when all allowed administrative claims have been paid in full.

6.      **Debtor**:    Sanctuary Evangelistic Church, Inc.., a religious not for profit Oklahoma Corporation, sometimes referred to in this document as "Debtor" or "SEC".

7.      **Disclosure Statement**:    Is the document and any amendments or modifications thereto filed by the Debtor, which is ultimately approved by this Court pursuant to 11 U.S.C. §1125.

8.      **Effective Date**:    The 20 days after the date of the docketing of the Order Confirming this Plan.

9.      **Monthly Plan Payment Due Date** :    Unless otherwise stated, all periodic monthly payments of deferred cash payments shall commence on the 10th day of the first full calendar month following the Effective Date and on the same day of each calendar month thereafter until the claim is paid in full.

10.     **The Plan**:    The Plan is the Small Business Plan and any amendments or modifications thereto filed.

11.    **Reorganized Debtor**:    The Debtor after the Effective Date.

12.    **Secured Claim**:    A claim which asserts some security interest, mortgage or other lien upon property of the estate and is a secured claim to the extent of the value of the property so securing such claim pursuant to 11 U.S.C. §506.

13.    **Unsecured Claim**:    Any claim which is not a secured claim.

## II.    BACKGROUND

**A.**  Description and History of Sanctuary Evangelistic Church

Sanctuary Evangelistic Church is a not-for-profit, religious corporation incorporated in the State of Oklahoma that was organized on March 5, 1987 and incorporated on February 6, 1989.  It has a history of serving the Tulsa community since 1987, and more recently, the Downtown Tulsa Neighborhoods District, known as The Pearl District, since 1991.   SEC has been a leader of the revitalization efforts of the area since 1996.

Upon moving to the current location, Sanctuary Evangelistic Church actively began to implement its Vision, centered on three specific areas: Spiritual Self-Esteem, Education, and Economics.   As such, Sanctuary Evangelistic Church owned and operated its own learning center for children in underserved and at-risk areas from 1998-2008.   During this time period, Sanctuary Evangelistic Church also partnered with the Head Start Program, Amos House, Tulsa Public Schools, Oral Roberts University, and Kingdom University in order to offer early and continuing educational programs for both children and adults alike, in the urban Tulsa community.

The Internal Revenue Service has determined that the Debtor is an organization described in Section 501(c)(3) of the Internal Revenue Code, and is therefore exempt from federal income taxation under the ;provisions of Section 5019a) thereof.   Debtor also operates a church as defined under the IRC.   As a not-for-profit entity, the Debtor has no shareholders or other equity interest holders.

**B.**  Events Leading to Chapter 11 Filing.

In order to improve upon the Tulsa facility and keep up with the revitalization efforts of The Pearl District, in June 2007, Sanctuary Evangelistic Church contracted with a roofing company to repair its roof.   Because of the negligence of the roofing company in deeming it unnecessary to cover the facility with tarp or a proper cover after the roof had been removed for repair, Sanctuary Evangelistic Church was left with over 1.3 million dollars of rain damage from the ensuing 30 day rain. The rain damaged the exposed sanctuary, educational and storage facilities.   SEC was then forced to hold services in the smallest area of its facility, its fellowship

hall, thus limiting its normal seating capacity of 480 persons to one that holds just over 100 persons.

SEC sought to make a claim against its insurance and was denied coverage since the cause of the damage was negligence of the roofing contractor.   Then they attempted to make a claim against the roofing contractors and found that the contractor's insurance had lapsed.

SEC was able to make its scheduled payments until 2009 despite the reduction in attendance in the limited facilities.   During the summer of 2009 the HVAC systems were stripped of copper and damaged beyond simple repair. This was the proverbial breaking of the camel's back. With temperatures exceeding 110° inside the building, a decision had to be made regarding either to repair the units or to close the facility.   It was at this crossroads that SEC contacted the bank and informed them of its distress.   SEC had to divert funds to repair the HVAC systems or close its facility.   SEC attempted to renegotiate the length of the term and lower interest rate of the existing loan, but was unable to reach agreeable terms with the mortgage holder BOKF, N.A.

Finally, any the end of 2011, the 5th Street apartments owned by SEC, burned to the ground and SEC was forced to pay for demolition of the charred buildings.

The previous expenses and the cost of demolition caused SEC to fall behind sufficiently on their monthly mortgage obligations that an action for foreclosure was filed in the District Court of Tulsa County, Oklahoma, cs. no. CJ 2011-7572.   Judgment was granted against the Defendants on June 29, 2012 and Confirmation of Sheriff's Sale was set for October 16, 2012.

SEC chose to file for relief under Chapter 11 of the US Bankruptcy Code to reorganize their financial affairs and retain their church facilities.

### C.  Current and Historical Financial Conditions.

Through much toil, sweat, and tears the SEC church members, banded together and repaired the sanctuary and moved its services from the fellowship hall back into the main sanctuary.   The sanctuary hall seats up to 480.   The church has been able to meet in the main sanctuary since September 2012.   This has resulted in an increase in new members and the return of many former members.   Additionally, SEC is able to host conferences with national and regional speakers.   Returning to the main sanctuary allows for the church to return to growth despite the previous adversities it has faced since 2007.   SEC will be able to continue to grow in church attendance and hold regular conferences, increasing the revenue and the financial stability of the church.

SEC's ordinary course of business has continued with steady increase since moving their meetings back into the sanctuary.

The identity and fair market value of the estate's assets are listed in Exhibit B.   The assets were valued by Milford J. Carter by comparing similar assets in relation to age and condition of the asset.

The Debtor's most recent financial statements if any issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit C.

### D.        Insiders of the Debtor

| Insider Name: **Milford J. Carter** | Relationship to the Debtor: **Pastor and Chairman** |
|---|---|
| Compensation paid by the Debtor or its affiliates to this insider during the two years prior to the commencement of the Debtor's bankruptcy case: **Mr. Carter has received no compensation other than the payment of insurance on the behalf of himself and family and a housing allowance that pays the rent on his home.** | |
| Compensation paid during the pendency of this chapter 11 case: **Mr. Carter has asked for no additional expenses or salary from the Debtor other than the continuance of the payment for insurance for him and his family and the housing allowance.** | |

### E.  Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were:
Milford Carter, Chairman
Eric McInnis, Vice-Chairman
Evelyn Carter, Secretary
Bert Brown, Treasurer

The Managers are serving in the same capacities during the Debtor's Chapter 11 case. The Debtor also anticipates that after the effective date of an order confirming the Plan (the "Effective Date"), the Managers will continue will continue in those roles and that their responsibilities will not change.

The Post Confirmation Managers do not receive compensation for their positions or management.

Milford Carter, the Chairman, also acts as the Pastor of the church.   It is projected that at some time he will begin to receive a salary from SEC if the Debtor is able to satisfy its financial obligations.

### F.  Significant Events During the Bankruptcy Case

SEC has designated itself as a "small business debtor" under 11 USC § 101(51D) and is

proceeding in this case in that manner.

Debtors in Possession do not have any asset sales outside the ordinary course of business, debtor in possession financing, or cash collateral orders.

Jerry L. Gunter of Winters & King, Inc. has been approved by the court to represent the Debtor and Debtor in Possession.

Debtor was in foreclosure with BOKF, N.A., in Tulsa County District Court, State of Oklahoma, and any other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Court.

### G. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### H. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.   Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.   The procedures for resolving disputed claims are set forth in Article V of the Plan.

### III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

A plan of reorganization, such as the Plan, sets out the Debtor's proposed treatment of the claims of creditors.   As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.   The Plan also states whether each class of claims or equity interests is "impaired" or "unimpaired".   If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain type of claims are automatically entitled to specific treatment under the Code and are not "classified" by the plan proponent such as the Debtor.   They are not considered impaired, and holders of such claims do not vote on the Plan.   They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.   As such, the Plan has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11

case which are allowed under § 507(a)(2) of the Code.   The Code requires all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|--------------------|
| Professional Fees | $15,000.00 | Paid in the full amount as authorized and approved by the Court. |
| Office of the U.S. Trustee Fees | Unknown | Paid in the full amount when due according to statute. |
| Expenses arising in the ordinary course of business of the Debtor's business after the Petition date | None. (Ordinary course expenses have been kept and will be kept current during this case. | Paid in full on the Effective Date or according to the terms of the obligation, if later. |

2.   *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.   Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|------------------------------------|----------------------|--------------------|-----------|

**C.   Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.   *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.   If

the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured claim of*:<br>Name = American Heritage Bank<br><br>Collateral Description = 213 South Grand Ave., Okmulgee, OK<br><br>Allowed Secured Amount = $4,969.74<br><br>Priority of Lien = 1 | No | Unimpaired | No treatment required.<br>Monthly Pmt = $4,969.74<br>Pmts Begin = 3/5/2013<br>Pmts End = 3/5/2013<br>Interest rate % = 6.25<br>Treatment of<br>Lien = Lien is retained until all obligations secured by the subject mortgage and security interest are satisfied. |
| 2 | *Secured claim of*:<br>Name = BOKF NA<br><br>Collateral Description = 1228 East 5th Street, Tulsa, OK<br><br>Allowed Secured Amount = $264,312.53<br><br>Priority of Lien = 1<br><br>Principal owed = $264,312.53<br><br>Total claim = $264,312.53 | No | Impaired | Loan to be restructured as follows, interest rate is fixed at 5.750, with all other, not inconsistent, terms of the subject note and other loan documents continuing to apply:<br>Monthly Pmt = $2,901.34<br>Pmts Begin = 3/5/2013<br>Pmts End = 3/5/2023<br>Interest rate % = 5.750%<br>Treatment of<br>Lien =<br>Retained until all obligations secured by the subject mortgage and security interest is satisfied. |

2.      Classes of Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.   The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept a different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
|         |             |            |           |

        3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

Code section 1122(b) permits a plan proponent, such as this Debtor, to create a class of claims consisting of all claims that are less than an amount the Court approves as reasonable and necessary for "administrative convenience".   The claims in such a class are small enough that the cost of treatment of such claims in any manner other than by a one-time payment may exceed the amount of the claims themselves.

The Debtor's Plan proposes an administrative convenience class of claims of $3,000.00 or less which will receive payment in full in a single payment after the Effective Date.

The following chart identifies the Plan's proposed treatment of Classes 3 through 5 which contain general unsecured claims against the Debtor:
General Unsecured Classes: 2
General Unsecured Impaired Classes: 0
General Unsecured Unimpaired Classes: 2

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | General Unsecured Class | Unimpaired | To be paid pro rata portion of $35,229.89<br>Monthly Pmt  = $587.10<br>Pmts Begin    = 3/5/2013<br>Pmts End      = 3/5/2018<br>Estimated percent      = 100% of claims paid. |
|   |             |            |           |

| | | |
|---|---|---|
| Class 5 - Administrative Convenience Class | Unimpaired | Claims Allowed at $3,000.00 shall be paid in full in cash on the Effective Date, but no more than $3,000.00 |

        4.    *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.   In a corporation, entities holding preferred or common stock are equity interest holders.   In a partnership, equity interest holders include both general and limited partners.   In a limited liability company ("LLC"), the equity interest holders are the members.   Finally, with

respect to an individual who is a debtor, the Debtor is the equity interest holder.

There are no equity interest holders.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
|         |             |            |           |

**D.**    **Means of Implementing the Plan**

1.    *Source of Payments*

Payments and distributions under the Plan will be funded by one or more of the following sources:

a.   Accumulated case.   Debtors anticipate having $10,000.00 cash accumulated and available at the time of the Effective Date to satisfy all obligations available under the plan due to be paid as of that date.

b.   Future Income.   Continued donations by individuals from attendance of meetings.

2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Insider (yes or no)? | Position | Compensation |
|------|----------------------|----------|--------------|
| Milford Carter | Yes | Chairman | None at this time |
| Eric McInnis | No | Vice-Chairman | None |
| Evelyn Carter | No | Secretary | None |
| Bert Brown | No | Treasurer | None |

E.    **Risk Factors**

The proposed Plan has the following risks:

1.   Certain Risks Associated with the Commencement of the Case.

The Debtor is a Church with regular meetings whereby people attend the meetings and make donations to the Debtor.   A dramatic reduction in attendance would have adverse consequences to the Debtor and its ability to fund the plan.

2.   Certain Risks of Non-Confirmation.

There can be no assurance that the requisite acceptance of votes to confirm the Plan will be received.   Even if the requisite acceptances are received, there can be no assurance that the

Court will confirm the Plan.   A non-accepting creditor of the Debtor might challenge the adequacy of the Disclosure Statement, or the balloting procedures and results, as not being in compliance with the Bankruptcy Code and /or Bankruptcy Rules.

Even if the Court were to determine that this Disclosure Statement and the balloting procedures and results were appropriate, the Court could still decline to confirm the Plan if it were to find that any of the statutory requirements for confirmation had not been met.   The Bankruptcy Code section 1129 sets forth the requirements for confirmation and requires, among other things, a finding by the Court that the confirmation of the Plan is not likely to be followed by a liquidation or a need for further financial reorganization, and that the value of distribution to non-accepting holders of claims within a particular class under the Plan will not be less than the value of distributions such holders would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

While there can be no assurance that the Court will conclude that these requirements have been met, the Debtor believes that the Plan will not be followed by a need for further financial reorganization and that non-accepting Holders within each Class under the Plan will receive distributions at least as great as would be received following a liquidation pursuant to Chapter 7 of the Bankruptcy Code when talking into consideration all administrative claims and costs associated with any such Chapter 7 case.

3. Risks Relating to the Projections.

In connection with the development of the Plan, and in order to present the projected effects of the Plan, the Debtor has prepared the Projections.   The Projections assume the Plan and the transactions contemplated thereby will be implemented in accordance with their terms.

F.      **Executory Contracts and Unexpired Leases**

The Plan, in Exhibit A, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.   Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.   Exhibit A also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit A will be rejected under the Plan.   Consult your advisor or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

G.    **Tax Consequences of Plan**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

There may be federal, state and /or local tax consequences for the Debtor and its creditors as a result of the Plan.   The tax consequences may be complex and, in some instances, uncertain. Each creditor is strongly urged to consult its own tax advisor regarding the federal, state and local tax consequences of the plan.

IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.   These include the requirements that:   the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.   These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.   A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes [@@insert classes] are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.   The Plan Proponent believes that classes [@@insert classes] are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.    **What Is an Allowed Claim or an Allowed Equity Interest?**

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.   Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.   When a claim or equity interest is not allowed, the creditor or equity interest holder

holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case March 25, 2013***

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.   As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interest in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.      **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2].

1.      **Votes Necessary for a Class to Accept the Plan**

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      **Treatment of Nonaccepting Classes**

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.   A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.      **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.   A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

D.      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.      *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.   Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

2.      *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments.   Projected financial information is listed in Exhibit G.

The Debtor's financial projections demonstrate that it will have an aggregate annual cash flow, after paying operating expenses and post-confirmation taxes, to fund all payments provided under the Plan.   The final Plan payment is expected to be paid 3/5/2021.   The Debtor believes that the projections are reasonable, conservative estimates of its financial performance over the term in which distributions will be made under the Plan.   The projections account for changes in income over the term of the Plan.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## V.      EFFECT OF CONFIRMATION OF PLAN

### A.      DISCHARGE OF DEBTOR

<u>Discharge.</u>   On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).   After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B.      **Modification of Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan.   However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.      **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal

Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.   Alternatively, the Court may enter such a final decree on its own motion.

## VI.   **BALLOTING**

Holders of claims in Classes 1, 2, 3, 4 and 5 are requested to complete an appropriate Ballot, in accordance with the instructions set forth thereon.   If Ballots are damaged or lost, or if a claim holder has any questions concerning the voting instructions, it may contact Jerry L. Gunter, Esq. at the address, email address or telephone number indicated below.   Incomplete and unsigned Ballots will be returned to the claim holder.

All votes to accept or reject the Plan must be cast by using the Ballot enclosed with the Disclosure Statement.   No other votes will be counted.   A properly completed and excuted Ballot must be received no later than the time required on the attached Order, by Jerry L. Gunter, the Balloting Agent, at the following address:

Jerry L. Gunter

Winters & King, Inc.

2448 East 81st Street, Suite 5900

Tulsa, OK 74137

918-494-6868

jgunter@wintersking.com

Ballots must be returned by U.S. Mail, hand delivered or overnight mail.   Facsimile transmissions are not allowed.   A return envelope will be provided for your convenience.

Dated this February 12, 2013.

/s/Jerry L. Gunter_____

Jerry L. Gunter, OBA #17041

Winters & King, Inc.

2448 East 81st Street, Suite 5900

Tulsa, OK 74137

918-494-6868 Telephone

918-491-6297 Fax

jgunter@wintersking.com

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA
## TULSA DIVISION

IN RE:                              )
                                    )
Sanctuary Evangelistic Church, Inc. )     No.   12-12616
                                    )     Chapter 11 Small Business Case
                                    )
**DEBTOR**                          )

## SANCTUARY EVANGELISTIC CHURCH, INC.'S
## FIRST AMENDED PLAN OF REORGANIZATION, DATED 2/12/2013

## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Sanctuary Evangelistic Church, Inc., (the "Debtor") from cash on hand and cash flow from future income.

This plan provides for __2__ classes of secured claims; __2__ class of unsecured claims; Unsecured creditors holding allowed claims will receive distribution of $35,229.89.   This Plan also provides for the payment of administrative and priority claims.

All creditors should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.   A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holder has been circulated with this Plan.

**Your rights may be affected.   You should read these papers carefully and discuss them with your attorney, if you have one.   (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 2.01 | Class 1. | The claim of American Heritage Bank, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.02 | Class 2. | The claim of BOKF NA, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | Class 3. | Unsecured claims. |
| 2.04 | Class 4 | Administrative Convenience Claims. |

.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

      3.01   <u>Unclassified Claims</u>.  Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

      3.02   <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

      3.03   <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid its allowed claim in full on the effective date.

      3.04   <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

      4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Secured claim of American Heritage Bank Allowed Secured Claim = $4,969.74 | Unimpaired | No treatment required. Monthly payment $4,969.74 Payments begin = 3/5/2013 Payments end = 3/5/2013 Fixed interest rate = 6.25% |

| Class 2 - Secured claim of BOKF NA<br><br>Allowed Secured Claim = <br><br>$264,312.53 | Impaired | Loan to be restructured as follows, interest rate is fixed at 5.750, with all other, not inconsistent, terms of the subject note and other loan documents continuing to apply:<br>Monthly Pmt  = $2,901.34<br>Pmts Begin       = 3/5/2013<br>Pmts End          = 3/5/2023<br>Interest rate % = 5.750%<br>Treatment of<br>Lien      =<br>Retained until all obligations secured by the subject mortgage and security interest is satisfied. |
|---|---|---|

| Class 3 - Unsecured Creditors | Unimpaired | To be paid pro rata portion of $35,229.89<br>Monthly Pmt  = $587.10<br>Pmts Begin       = 3/5/2013<br>Pmts End          = 3/5/2018<br>Estimated percent = 100% of claims paid. |
|---|---|---|

| Class 4 - Administrative Convenience Class | Unimpaired | Claims Allowed at $3,000.00 shall be paid in full in cash on the Effective Date, but no more than $3,000.00 |
|---|---|---|

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.   A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.   No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

    5.03    <u>Settlement of Disputed Claims</u>.   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    6.01    <u>Assumed Executory Contracts and Unexpired Leases</u>.

    (a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII:

| Party | Description of Contract | Election |
|---|---|---|
| Delta Dental | Dental Insurance | Assumed |
| Farmers Insurance | Insurance | Assumed |
| GMP Life Insurance Co. | Life Insurance | Assumed |
| GuideOne Insurance | Umbrella and Building Insurance. | Assumed |
| Modern Woodmen of America | Life Insurahce Plicy | Assumed |
| Progressive Northern Insurance Co. | Automobile Insurance | Assumed |
| United Healthcare | Health Insurance | Assumed |

    (b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the Effective Date.

| Party | Description of Contract | Election |
|---|---|---|

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

    Distributions and payments under and pursuant to the Plan will be funded from the following sources:  (i) the Debtor's accumulated cash, and (ii) the Debtor's post-confirmation income from future income.

## ARTICLE VIII
## GENERAL PROVISIONS

    8.01    <u>Definitions and Rules of Construction</u>.   The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02    Effective Date of Plan. The Effective Date of this Plan shall be 20 days after the date of docketing of the Order Confirming plan.   If, however, an appellate stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.03    Severability.   If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceabililty and operative effect on any other provision of this Plan.

8.04    Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Oklahoma govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided for in this Plan.

## ARTICLE IX
## DISCHARGE

9.01    Discharge.   On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 114a(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

Dated on February 12, 2013.

Respectfully submitted,

 /s/Jerry L. Gunter
Jerry L. Gunter, OBA #17041
Attorney for Debtor and Debtor
in Possession
2448 East 81st Street, Ste 5900
Tulsa, Oklahoma 74137-4259
Ph: (918) 494-6868
Fx: (918) 491-6297
jgunter@wintersking.com

**EXHIBIT B**
**IDENTITY AND VALUE OF MATERIAL ASSETS OF DEBTOR**

| <u>ASSETS</u> | <u>VALUE</u> |
|---|---|
| **Assets** | |
| a. Cash on hand | $5,600.00 |
| b. Accounts receivable | 0 |
| c. Inventory | 0 |
| d. Office furniture & equipment | $134,845.00 |
| e. Machinery & equipment | 0 |
| f. Automobiles | 0 |
| g. Building & Land | $785,000.00 |
| h. Customer List | 0 |
| i. Investment property (such as stocks, bonds or other financial assets) | 0 |
| j. Lawsuits or other claims against third-parties | 0 |
| k. Other intangibles (such as avoiding powers actions) | 0 |

**EXHIBIT C**

2:39 PM

01/13/13

Cash Basis

# Sanctuary Evangelistic Church Inc.
# Balance Sheet
## As of December 31, 2012

|  | Dec 31, 12 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1 · Peoples State Bank | 4,486.73 |
| 2 · Bank of America | -54.33 |
| 2800 · SANCTUARY EVANGELISTIC CHURCH | 7,892.96 |
| 3 · American Heritage Bank | 3.78 |
| **Total Checking/Savings** | 12,329.14 |
| **Other Current Assets** | |
| 4 · SEC Okmulgee Bldg. & Facilities | 430,000.00 |
| 5 · SEC Tulsa Bldg. & Facilities | 1,116,000.00 |
| 6 · SEC Apartment Bldg. | 170,545.00 |
| 7 · Presentations Systems | 30,733.00 |
| **Total Other Current Assets** | 1,747,278.00 |
| **Total Current Assets** | 1,759,607.14 |
| **TOTAL ASSETS** | 1,759,607.14 |
| **LIABILITIES & EQUITY** | |
| **Equity** | |
| 3000 · Opening Bal Equity | 1,747,278.00 |
| 3900 · Retained Earnings | 12,254.33 |
| Net Income | 74.81 |
| **Total Equity** | 1,759,607.14 |
| **TOTAL LIABILITIES & EQUITY** | 1,759,607.14 |

1:34 PM
01/13/13
Cash Basis

# Sanctuary Evangelistic Church Inc.
## Profit & Loss by Class
### December 2012

| | 11-000 General (10 Consolidated) | Total 10 Consolidated | TOTAL |
|---|---|---|---|
| **Income** | | | |
| **Gift Categories Revenue** | | | |
| 1016 · Offering | 2,661.79 | 2,661.79 | 2,661.79 |
| 1018 · Tithes | 8,972.37 | 8,972.37 | 8,972.37 |
| **Total Gift Categories Revenue** | 11,634.16 | 11,634.16 | 11,634.16 |
| **Services Rendered Revenue** | | | |
| 1046 · Check Return Fees | 170.08 | 170.08 | 170.08 |
| **Total Services Rendered Revenue** | 170.08 | 170.08 | 170.08 |
| **Total Income** | 11,804.24 | 11,804.24 | 11,804.24 |
| **Expense** | | | |
| **Legal And Professional** | | | |
| 1608 · Other | 361.00 | 361.00 | 361.00 |
| **Total Legal And Professional** | 361.00 | 361.00 | 361.00 |
| **Occupancy** | | | |
| 1204 · Insurance Auto | 140.80 | 140.80 | 140.80 |
| 1206 · Insurance Building | 717.80 | 717.80 | 717.80 |
| 1208 · Lawn Care | 300.00 | 300.00 | 300.00 |
| 1212 · Loan Payment Expense | 600.00 | 600.00 | 600.00 |
| 1214 · Maintenance of Building | 140.34 | 140.34 | 140.34 |
| 1234 · Electric | 422.14 | 422.14 | 422.14 |
| 1236 · Telephone Service | 311.01 | 311.01 | 311.01 |
| **Total Occupancy** | 2,632.09 | 2,632.09 | 2,632.09 |
| **Salaries** | | | |
| 1108 · Health Insurance | 1,444.72 | 1,444.72 | 1,444.72 |
| 1112 · Life Insurance | 1,635.79 | 1,635.79 | 1,635.79 |
| 1132 · Dental Insurance | 109.30 | 109.30 | 109.30 |
| 1136 · Home Electricity | 149.30 | 149.30 | 149.30 |
| 1140 · Home Water & Refuge | 249.81 | 249.81 | 249.81 |
| **Total Salaries** | 3,588.92 | 3,588.92 | 3,588.92 |
| **1700-1 · Miscellaneous Expenses** | | | |
| 1704 · Bank Charges | 123.49 | 123.49 | 123.49 |
| **Total 1700-1 · Miscellaneous Expenses** | 123.49 | 123.49 | 123.49 |
| **Total Expense** | 6,705.50 | 6,705.50 | 6,705.50 |
| **Net Income** | 5,098.74 | 5,098.74 | 5,098.74 |

**EXHIBIT D**

B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF OKLAHOM ▾

In re SANCTUARY EVANGELISTIC CHURCH I,

*Debtor*

Case No. 12-12616-M

Small Business Case under Chapter 11

## SMALL BUSINESS MONTHLY OPERATING REPORT

Month: DECEMBER

Date filed: 01/21/2013

Line of Business: RELIGIOUS ORGANIZATION

NAISC Code: 813110

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

*Bert Brown*

Original Signature of Responsible Party

BERT BROWN

Printed Name of Responsible Party

**Questionnaire:** *(All questions to be answered on behalf of the debtor.)*

| | | Yes | No |
|---|---|---|---|
| 1. | IS THE BUSINESS STILL OPERATING? | ☑ | ☐ |
| 2. | HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☑ | ☐ |
| 3. | DID YOU PAY YOUR EMPLOYEES ON TIME? | ☐ | ☐ |
| 4. | HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH? | ☐ | ☑ |
| 5. | HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH | ☐ | ☐ |
| 6. | HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS? | ☑ | ☐ |
| 7. | HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☑ | ☐ |
| 8. | DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☑ | ☐ |
| 9. | ARE YOU CURRENT ON YOUR QUARTERLY FEE PAYMENT TO THE U.S. TRUSTEE? | ☑ | ☐ |
| 10. | HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☑ | ☐ |
| 11. | DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☑ |
| 12. | HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☑ |
| 13. | DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? | ☑ | ☐ |

Page 2

B 25C (Official Form 25C) (12/08)

| | | | |
|---|---|---|---|
| 14. | HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH? | ☐ | ☑ |
| 15. | DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH? | ☐ | ☑ |
| 16. | HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH? | ☐ | ☑ |
| 17. | HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH? | ☐ | ☑ |
| 18. | HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY? | ☑ | ☐ |

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX OBLIGATIONS?   ☐   ☑

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH. THE LIST SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

| | | |
|---|---|---|
| **TOTAL INCOME** | $ | 11,634.16 |

### SUMMARY OF CASH ON HAND

| | | |
|---|---|---|
| Cash on Hand at Start of Month | $ | 7,666.56 |
| Cash on Hand at End of Month | $ | 12,425.14 |
| PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU    **TOTAL** | $ | 12,425.14 |

*(Exhibit B)*

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK ACCOUNTS THIS MONTH. INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE PURPOSE AND THE AMOUNT. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

| | | |
|---|---|---|
| **TOTAL EXPENSES** | $ | 6,875.58 |

*(Exhibit C)*

## CASH PROFIT

| | | |
|---|---|---|
| INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)* | $ | 11,634.16 |
| EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)* | $ | 6,875.58 |
| *(Subtract Line C from Line B)*    **CASH PROFIT FOR THE MONTH** | $ | 4,758.58 |

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED
SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID.  THE LIST MUST INCLUDE
THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE
DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

|  | | |
|---|---|---|
| **TOTAL PAYABLES** | $ | 0.00 |

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK
YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD.  YOU SHOULD INCLUDE WHO
OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY
WAIVE THIS REQUIREMENT.)*

|  | | |
|---|---|---|
| **TOTAL RECEIVABLES** | $ | 0.00 |

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU
HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED
BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

| | |
|---|---|
| NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED? | 0 |
| NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT? | 0 |

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

| | | |
|---|---|---|
| PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING PERIOD? | $ | 0.00 |
| TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING OF THE CASE? | $ | 0.00 |

*NON-BANKRUPTCY RELATED:*

| | | |
|---|---|---|
| PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING PERIOD? | $ | 0.00 |
| TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING OF THE CASE? | $ | 0.00 |

B 25C (Official Form 25C) (12/08)

## PROJECTIONS

COMPARE YOUR ACTUAL INCOME AND EXPENSES TO THE PROJECTIONS FOR THE FIRST 180
DAYS OF YOUR CASE PROVIDED AT THE INITIAL DEBTOR INTERVIEW.

|  | | Projected | | Actual | | Difference |
|---|---|---|---|---|---|---|
| INCOME | $ | 11,700.00 | $ | 11,634.16 | $ | -65.84 |
| EXPENSES | $ | 16,072.00 | $ | 6,875.58 | $ | -9,196.42 |
| CASH PROFIT | $ | -4,372.00 | $ | 4,758.58 | $ | 9130.58 |

TOTAL PROJECTED INCOME FOR THE NEXT MONTH:                                $   11,700.00

TOTAL PROJECTED EXPENSES FOR THE NEXT MONTH:                          $   16,262.00

TOTAL PROJECTED CASH PROFIT FOR THE NEXT MONTH:                    $   -4,562.00

## ADDITIONAL INFORMATION

**PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT AND BALANCE SHEET
WHICH YOU PREPARE INTERNALLY.**

# CONSOLIDATION STATEMENT AND REGISTER AT CLOSE
# DECEMBER REVENUE

## Consolidation of Accounts 45942 and 75833

**Updated:** **1/18/2013**

| Date | Check # | Description | Credit |
|------|---------|-------------|--------|
| | | **BEGINNING BALANCE** | **3731.03** |
| | | | |
| 12/4/2012 | Elect | MERCHANT BANKCD DEPOSIT 267735762887 | 1657.47 |
| 12/10/2012 | Elect | MERCHANT BANKCD DEPOSIT267735762887 | 75.74 |
| 12/11/2012 | Elect | Telecheck INV112012D 0380666476 | 718.99 |
| 12/18/2012 | Elect | MERCHANT BANKCD DEPOSIT267735762887 | 768.49 |
| 12/20/2012 | Elect | MERCHANT BANKCD DEPOSIT267735762887 | 39.75 |
| 12/24/2012 | Elect | MERCHANTT BANKCD DEPOSIT267735762887 | 327.22 |
| 12/26/2012 | Elect | MERCHANTT BANKCD DEPOSIT267735762887 | 586.42 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| 12/31/2012 | 45942 | **Account Summary Balance** | **4174.08** |
| | | | |
| | | | |
| | | **BEGINNING BALANCE** | **3935.53** |
| | | | |
| 12/3/2012 | | DEPOSIT | 216.00 |
| 12/3/2012 | | DEPOSIT | 1647.00 |
| 12/10/2012 | | DEPOSIT | 226.00 |
| 12/10/2012 | | DEPOSIT | 1034.00 |
| 12/10/2012 | | DEPOSIT CORRECTION | 0.08 |
| 12/19/2012 | | DEPOSIT | 136.00 |
| 12/19/2012 | | DEPOSIT | 1225.00 |
| 12/24/2012 | | DEPOSIT | 546.00 |
| 12/24/2012 | | DEPOSIT | 1335.00 |
| 12/31/2012 | | DEPOSIT | 1095.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| 12/31/2012 | 78533 | **Account Summary Balance** | **7460.08** |
| | | | |
| | | | |
| 12/31/2012 | | **COMBINED REVENUE BALANCE TOTAL TO DATE** | **11634.16** |

# CONSOLIDATION STATEMENT AND REGISTER AT CLOSE
# DECEMBER EXPENSES

## Consolidation of Accounts 45942 and 75833

Updated:    1/18/2013

| Date | Check # | Description | Debit |
|---|---|---|---|
| | | | |
| | | | |
| 12/4/2012 | Elect | MERCHANT BANKCD DEPOSIT 267735762887 | 1.69 |
| 12/4/2012 | Elect | MERCHANT BANKCD INTERCHNG 267735762887 | 67.90 |
| 12/4/2012 | Elect | MODERN WOODMAN INSPREMIUM 7936455 121000 | 659.58 |
| 12/4/2012 | Elect | MODERN WOODMAN INSPREMIUM 7936455 121201 | 781.90 |
| 12/5/2012 | Elect | United Healthcare PREMIUM 3046014391 | 1090.75 |
| 12/6/2012 | Elect | GPM LIFE INS CO INS. PREMXXXXX4410 | 194.31 |
| 12/6/2012 | Elect | REDEPOSIT FEE | 5.00 |
| 12/10/2012 | Elect | MERCHANT BANK FEE | 7.00 |
| 12/11/2012 | Elect | RETURNED DEPOSIT ITEM | 100.00 |
| 12/11/2012 | Elect | PROGRAM NORTHERN IINS PREM | 140.80 |
| 12/11/2012 | Elect | RETURN ITEM FEE | 5.00 |
| 12/13/2012 | Elect | RETURNED DEPOSITED ITEM | 55.08 |
| 12/13/2012 | Elect | RETURN ITEM FEE | 5.00 |
| 12/19/2012 | Elect | Telecheck INV122012D 0380666476 | 40.00 |
| 12/28/2012 | Elect | DELTA DENTAL INS AR PAYMENT 11-100136007 | 109.30 |
| 12/31/2012 | Elect | SERVICE CHARGE | 6.90 |
| 12/31/2012 | Elect | FARMERS INS EFT PYMT P88642377002RCD | 353.97 |
| | | | |
| 12/31/2012 | 45942 | Account Summary Balance | 3624.18 |
| | | | |
| 12/4/2012 | 2529 | | 311.01 |
| 12/4/2012 | 2530 | CLINTON VANN    LAWN SERVICE | 300.00 |
| 12/7/2012 | Elect | GUIDEONE MUTUAL INS. PREM | 717.80 |
| 12/12/2012 | 2531 | TERRYE TOWNES | 200.00 |
| 12/13/2012 | Elect | BILLMATRIX BILLPAYFEE 10282581582 | 2.95 |
| 12/13/2012 | Elect | AEP PUBLIC SERVICE BILL PAY 10282581581 | 146.35 |
| 12/19/2012 | | U.S. POSTAL | 86.00 |
| 12/19/2012 | | M.J.CARTER | 275.00 |
| 12/21/2012 | Elect | PSO | 419.19 |
| 12/21/2012 | Elect | PSO | 2.95 |
| 12/24/2012 | 2536 | DUANE HAIRSTON | 38.43 |
| 12/27/2012 | 2537 | TERRYE TOWNES | 200.00 |
| 12/27/2012 | 2541 | TERRYE TOWNES | 200.00 |
| 12/26/2012 | 2538 | HOME DEPOT | 101.91 |
| 12/27/2012 | Elect | CITY OF TULSA CHOICE PAY | 249.81 |
| | | | |
| 12/31/2012 | 78533 | Account Summary Balance | 3251.40 |
| | | | |
| | | | |
| | | | |
| 12/31/2012 | | COMBINED EXPENSE BALANCE TOTAL TO DATE | 6875.58 |

2:39 PM

01/13/13

Cash Basis

**Sanctuary Evangelistic Church Inc.**
# Balance Sheet
### As of December 31, 2012

|  | Dec 31, 12 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1 · Peoples State Bank | 4,486.73 |
| 2 · Bank of America | -54.33 |
| 2800 · SANCTUARY EVANGELISTIC CHURCH | 7,892.96 |
| 3 · American Heritage Bank | 3.78 |
| **Total Checking/Savings** | 12,329.14 |
| **Other Current Assets** | |
| 4 · SEC Okmulgee Bldg. & Facilities | 430,000.00 |
| 5 · SEC Tulsa Bldg. & Facilities | 1,116,000.00 |
| 6 · SEC Apartment Bldg. | 170,545.00 |
| 7 · Presentations Systems | 30,733.00 |
| **Total Other Current Assets** | 1,747,278.00 |
| **Total Current Assets** | 1,759,607.14 |
| **TOTAL ASSETS** | 1,759,607.14 |
| **LIABILITIES & EQUITY** | |
| **Equity** | |
| 3000 · Opening Bal Equity | 1,747,278.00 |
| 3900 · Retained Earnings | 12,254.33 |
| Net Income | 74.81 |
| **Total Equity** | 1,759,607.14 |
| **TOTAL LIABILITIES & EQUITY** | 1,759,607.14 |

1:34 PM

01/13/13

Cash Basis

# Sanctuary Evangelistic Church Inc.
## Profit & Loss by Class
### December 2012

| | 11-000 General<br>(10 Consolidated) | Total 10 Consolidated | TOTAL |
|---|---|---|---|
| **Income** | | | |
| **Gift Categories Revenue** | | | |
| 1016 · Offering | 2,661.79 | 2,661.79 | 2,661.79 |
| 1018 · Tithes | 8,972.37 | 8,972.37 | 8,972.37 |
| **Total Gift Categories Revenue** | 11,634.16 | 11,634.16 | 11,634.16 |
| **Services Rendered Revenue** | | | |
| 1046 · Check Return Fees | 170.08 | 170.08 | 170.08 |
| **Total Services Rendered Revenue** | 170.08 | 170.08 | 170.08 |
| **Total Income** | 11,804.24 | 11,804.24 | 11,804.24 |
| **Expense** | | | |
| **Legal And Professional** | | | |
| 1608 · Other | 361.00 | 361.00 | 361.00 |
| **Total Legal And Professional** | 361.00 | 361.00 | 361.00 |
| **Occupancy** | | | |
| 1204 · Insurance Auto | 140.80 | 140.80 | 140.80 |
| 1206 · Insurance Building | 717.80 | 717.80 | 717.80 |
| 1208 · Lawn Care | 300.00 | 300.00 | 300.00 |
| 1212 · Loan Payment Expense | 600.00 | 600.00 | 600.00 |
| 1214 · Maintenance of Building | 140.34 | 140.34 | 140.34 |
| 1234 · Electric | 422.14 | 422.14 | 422.14 |
| 1236 · Telephone Service | 311.01 | 311.01 | 311.01 |
| **Total Occupancy** | 2,632.09 | 2,632.09 | 2,632.09 |
| **Salaries** | | | |
| 1108 · Health Insurance | 1,444.72 | 1,444.72 | 1,444.72 |
| 1112 · Life Insurance | 1,635.79 | 1,635.79 | 1,635.79 |
| 1132 · Dental Insurance | 109.30 | 109.30 | 109.30 |
| 1136 · Home Electricity | 149.30 | 149.30 | 149.30 |
| 1140 · Home Water & Refuge | 249.81 | 249.81 | 249.81 |
| **Total Salaries** | 3,588.92 | 3,588.92 | 3,588.92 |
| **1700-1 · Miscellenous Expenses** | | | |
| 1704 · Bank Charges | 123.49 | 123.49 | 123.49 |
| **Total 1700-1 · Miscellenous Expenses** | 123.49 | 123.49 | 123.49 |
| **Total Expense** | 6,705.50 | 6,705.50 | 6,705.50 |
| **Net Income** | 5,098.74 | 5,098.74 | 5,098.74 |

# peoplesbank

P.O. BOX 50000 · TULSA, OK 74150
www.peoplesbanktulsa.com

Account Statement
ACCOUNT:          5833      12/31/2012
DOCUMENTS:          19      Member FDIC

```
>00837 3025795 001 092047  10Z
```

SANCTUARY EVANGELISTIC CHURCH          30
P O BOX 1737                           10
TULSA OK  74101-1737                    9

```
================================================================
```

Never respond to a request for your private information by email. Peoples
Bank will never request your information by this means.

```
================================================================
```

### Free Business Checking ACCOUNT 5833

```
================================================================
```

|                              |              |
|------------------------------|-------------:|
| LAST STATEMENT 11/30/12      |     3,935.53 |
| 10 CREDITS                   |     7,460.08 |
| 15 DEBITS                    |     3,251.40 |
| THIS STATEMENT 12/31/12      |     8,144.21 |

- - - - - - - - - DEPOSITS - - - - - - - - -

| REF #.....DATE......AMOUNT | REF #.....DATE......AMOUNT | REF #.....DATE......AMOUNT |
|----------------------------|----------------------------|----------------------------|
| 12/03      216.00          | 12/10    1,034.00          | 12/24      546.00          |
| 12/03    1,647.00          | 12/18      136.00          | 12/24    1,335.00          |
| 12/10      226.00          | 12/18    1,225.00          | 12/31    1,095.00          |

- - - - - - - - OTHER CREDITS - - - - - - - -

| DESCRIPTION         | DATE  | AMOUNT |
|---------------------|-------|-------:|
| DEPOSIT CORRECTION  | 12/10 |    .08 |

- - - - - - - - - - CHECKS - - - - - - - - - -

| CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT |
|---------------------------|---------------------------|---------------------------|
| 2529 12/04    311.01      | 2535 12/19    86.00       | 2538 12/26    101.91      |
| 2530 12/04    300.00      | 2536 12/24    38.43       | 2539*12/19    275.00      |
| 2531*12/12    200.00      | 2537 12/27   200.00       | 2541 12/27    200.00      |

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

- - - - - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION                              | DATE  | AMOUNT |
|------------------------------------------|-------|-------:|
| GUIDEONE MUTUAL INS. PREM. 00992901503   | 12/07 | 717.80 |
| BILLMATRIX BILLPAYFEE 10282581582        | 12/13 |   2.95 |
| AEP PUBLIC SERVI BILL PAY 10282581581    | 12/13 | 146.35 |
| BILLMATRIX BILLPAYFEE 10300095122        | 12/21 |   2.95 |
| AEP PUBLIC SERVI BILL PAY 10300095121    | 12/21 | 419.19 |

* * * C O N T I N U E D * * *

00837 3025795 001761 003520 000010000004

**peoplesbank**

P.O. BOX 50000 · TULSA, OK 74150
www.peoplesbanktulsa.com

ACCOUNT:   #5833
DOCUMENTS:   19

PAGE:   2   Account Statement
12/31/2012   Member FDIC

SANCTUARY EVANGELISTIC CHURCH

========================================================================

Free Business Checking ACCOUNT #5833

========================================================================

– – – – – – – OTHER DEBITS – – – – – – – –

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| CITY OF TULSA CHOICEPAY COT/CHOICEPAY 114 | 12/27 | 249.81 |

– – – ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES – – –

```
**********************************************************************
*                          |    TOTAL FOR    |      TOTAL         *
*                          |   THIS PERIOD   |   YEAR TO DATE     *
*-------------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:    |      $.00       |      $.00          *
*-------------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:|      $.00       |      $.00          *
**********************************************************************
```

– – – – – – – DAILY BALANCE – – – – – – –

| DATE..........BALANCE | DATE..........BALANCE | DATE..........BALANCE |
|---|---|---|
| 12/03      5,798.53 | 12/13      5,380.50 | 12/26      7,699.02 |
| 12/04      5,187.52 | 12/18      6,741.50 | 12/27      7,049.21 |
| 12/07      4,469.72 | 12/19      6,380.50 | 12/31      8,144.21 |
| 12/10      5,729.80 | 12/21      5,958.36 | |
| 12/12      5,529.80 | 12/24      7,800.93 | |





**peoplesbank**

P.O. BOX 50000 • TULSA, OK 74150
www.peoplesbanktulsa.com

Account Statement
ACCOUNT:          5942    12/31/2012
DOCUMENTS:            0   Member FDIC

>00340 3025795 001 092047 10Z

SANCTUARY EVANGELISTIC CHURCH          30
P O BOX 1737                            0
TULSA OK  74101-1737                    0

Never respond to a request for your private information by email. Peoples
Bank will never request your information by this means.

## Business Checking ACCOUNT #5942

| | | |
|---|---|---|
| LAST STATEMENT 11/30/12 | | 3,731.03 |
| 7 CREDITS | | 4,174.08 |
| 17 DEBITS | | 3,624.18 |
| THIS STATEMENT 12/31/12 | | 4,280.93 |

- - - - - - - OTHER CREDITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| MERCHANT BANKCD DEPOSIT 267735762887 | 12/04 | 1,657.47 |
| MERCHANT BANKCD DEPOSIT 267735762887 | 12/10 | 75.74 |
| MERCHANT BANKCD DEPOSIT 267735762887 | 12/11 | 718.99 |
| MERCHANT BANKCD DEPOSIT 267735762887 | 12/18 | 768.49 |
| MERCHANT BANKCD DEPOSIT 267735762887 | 12/20 | 39.75 |
| MERCHANT BANKCD DEPOSIT 267735762887 | 12/24 | 327.22 |
| MERCHANT BANKCD DEPOSIT 267735762887 | 12/26 | 586.42 |

- - - - - - - OTHER DEBITS - - - - - - - -



| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| MERCHANT BANKCD INTERCHNG 267735762887 | 12/04 | 1.69 |
| MERCHANT BANKCD FEE 267735762887 | 12/04 | 67.90 |
| MODERN WOODMEN INSPREMIUM 8528036 121201 | 12/04 | 659.58 |
| MODERN WOODMEN INSPREMIUM 7936455 121201 | 12/04 | 781.90 |
| UnitedHealthcare PREMIUM 3046014391 | 12/05 | 1,090.75 |
| REDEPOSIT FEE | 12/06 | 5.00 |
| GPM LIFE INS CO INS. PREM. XXXXX4410 GPM | 12/06 | 194.31 |
| MERCHANT BANKCD FEE 267735762887 | 12/10 | 7.00 |
| RETURN ITEM FEE | 12/11 | 5.00 |
| RETURNED DEPOSITED ITEM | 12/11 | 100.00 |
| PROG NORTHERN INS PREM 01662373 ,SANCT | 12/11 | 140.80 |
| RETURN ITEM FEE | 12/13 | 5.00 |
| RETURNED DEPOSITED ITEM | 12/13 | 55.08 |

* * * C O N T I N U E D * * *

# peoplesbank

P.O. BOX 50000 • TULSA, OK 74150
www.peoplesbanktulsa.com

PAGE 2   Account Statement
ACCOUNT:        5942   12/31/2012
DOCUMENTS:        0      Member FDIC

SANCTUARY EVANGELISTIC CHURCH

==============================================================
Business Checking ACCOUNT #5942
==============================================================

- - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| Telecheck INV122012D 0380666476 | 12/19 | 40.00 |
| DELTA DENTAL INS AR PAYMENT 11-100136007 | 12/28 | 109.30 |
| SERVICE CHARGE | 12/31 | 6.90 |
| FARMERS INS EFT PYMT P88642377002RCD | 12/31 | 353.97 |

- - - ITEMIZATION OF SERVICE CHARGE PAID THIS PERIOD - - -

| | |
|---|---|
| TOTAL CHARGE FOR BALANCE FEE: | 10.00 |
| TOTAL CHARGE FOR DR ITEM FEE: | 2.20 |
| TOTAL CHARGE FOR CR ITEM FEE: | 2.20 |
| TOTAL BALANCE CR: | 7.50- |
| TOTAL SERVICE CHARGE PAID: | 6.90 |

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

| | TOTAL FOR THIS PERIOD | TOTAL YEAR TO DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES: | $.00 | $426.58 |
| TOTAL RETURNED ITEM FEES: | $.00 | $.00 |

- - - - - - - DAILY BALANCE - - - - - - -

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 12/04 | 3,877.43 | 12/13 | 3,069.22 | 12/26 | 4,751.10 |
| 12/05 | 2,786.68 | 12/18 | 3,837.71 | 12/28 | 4,641.80 |
| 12/06 | 2,587.37 | 12/19 | 3,797.71 | 12/31 | 4,280.93 |
| 12/10 | 2,656.11 | 12/20 | 3,837.46 | | |
| 12/11 | 3,129.30 | 12/24 | 4,164.68 | | |



**Exhibit E --** Liquidation Analysis

***Plan Proponent's Estimated Liquidation Value of Assets***

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $5,600.00 |
| b. | Accounts receivable | 0 |
| c. | Inventory | 0 |
| d. | Office furniture & equipment | $134,845.00 |
| e. | Machinery & equipment | 0 |
| f. | Automobiles | 0 |
| g. | Building & Land | $785,000.00 |
| h. | Customer List | 0 |
| i. | Investment property (such as stocks, bonds or other financial assets) | 0 |
| j. | Lawsuits or other claims against third-parties | 0 |
| k. | Other intangibles (such as avoiding powers actions) | 0 |
| | ***Total Assets at Liquidation Value*** | $925,445.00 |

**Less:**
Secured creditors' recoveries                                                                                         $269,282.27

**Less:**
Chapter 7 trustee fees and expenses                                                                                $261,335.25

**Less:**
Chapter 11 administrative expenses                                                                                  $19,200.00

**Less:**
Priority claims, excluding administrative expense claims                                                      0

(1) Balance for unsecured claims                                                                                      $375,627.48

(2) Total dollar amount of unsecured claims                                                                      $24,801.10

***Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation:***                                                                100%

***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:***                                                                                       100%

**Exhibit F --** Cash on hand on the effective date of the Plan

**Cash on hand on effective date of the Plan:**                                           $16,279.85

*Less -*

| | | | |
|---|---|---|---|
| Amount of administrative expenses payable on effective date of the Plan | - | $320.00 |
| Amount of statutory costs and charges | - | 0 |
| Amount of cure payments for executory contracts | - | 0 |
| Other Plan Payments due on effective date of the Plan | - | $8,824.45 |
| Balance after paying these amounts............................ | | $7,455.40 |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | | |
|---|---|---|
| $ | 12,425.14 | Cash in Debtor's bank account now |
| + | $3,854.71 | Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan.  Accumulation from projected earnings. |
| + | 0 | Borrowing |
| + | 0 | Capital Contributions |
| + | 0 | Other |
| $ | $16,279.85 | Total [This number should match "cash on hand" figure noted above] |

**EXHIBIT G**

# FIVE YEAR PROJECTION

Updated: 2/13/2013

| DESCRIPTION & YEAR | PERCENTAGE INCREASE | Jan-13 | Feb-13 | Mar-13 | Apr-13 | May-13 | Jun-13 | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUE PLAN 2013 | | 12500 | 14600 | 20500 | 15200 | 30500 | 16600 | 33500 | 36600 | 38000 | 19000 | 22000 | 12500 | 261602 |
| EXPENSE PLAN 2013 | | 10610 | 10116 | 22825 | 14310 | 22580 | 14250 | 14350 | 14720 | 27370 | 14890 | 12500 | 14200 | 248790 |
| NET REVENUE 2013 | | 2400 | 4385 | -2325 | 890 | 7920 | 2140 | 9350 | 1760 | 8630 | 1310 | 2800 | -1700 | 35768 |
| REVENUE PLAN 2014 | 6.00% | 13250 | 15370 | 21730 | 18112 | 33330 | 17480 | 38610 | 17480 | 38160 | 16860 | 23350 | 13250 | 261602 |
| EXPENSE PLAN 2014 | 3.00% | 11100 | 11116 | 16025 | 14739 | 33248 | 14791 | 28905 | 15162 | 26191 | 16131 | 20095 | 14528 | 216139 |
| NET REVENUE 2014 | | 2150 | 4256 | 5705 | 1373 | 9072 | 2689 | 9605 | 2328 | 8969 | 1529 | 20095 | -1376 | 51364 |
| REVENUE PLAN 2015 | 6.00% | 14045 | 16292 | 23034 | 17078 | 34270 | 18539 | 37641 | 18539 | 40450 | 17878 | 25281 | 14045 | 277182 |
| EXPENSE PLAN 2015 | 3.00% | 11433 | 11449 | 16509 | 15182 | 23965 | 15238 | 26862 | 16817 | 28037 | 16595 | 20930 | 18065 | 216442 |
| NET REVENUE 2015 | | 2612 | 4844 | 6525 | 1897 | 10314 | 3305 | 10048 | 2923 | 11413 | 2383 | 4583 | -1020 | 60750 |
| REVENUE PLAN 2016 | 6.00% | 14888 | 17270 | 24416 | 18103 | 36326 | 19652 | 39899 | 19652 | 42877 | 19050 | 26798 | 14888 | 293824 |
| EXPENSE PLAN 2016 | 3.00% | 11776 | 11792 | 17001 | 15637 | 24474 | 15892 | 27482 | 16093 | 28900 | 16652 | 21519 | 18617 | 222938 |
| NET REVENUE 2016 | | 3112 | 5478 | 7416 | 2466 | 11852 | 3960 | 12417 | 3667 | 12900 | 3004 | 4583 | -829 | 70898 |
| REVENUE PLAN 2017 | 6.00% | 15781 | 18306 | 26861 | 19190 | 38505 | 20831 | 42293 | 20831 | 45440 | 20200 | 28408 | 15781 | 311463 |
| EXPENSE PLAN 2017 | 3.00% | 12129 | 12146 | 17511 | 16106 | 25614 | 16182 | 28307 | 16583 | 30805 | 16534 | 21959 | 19982 | 229824 |
| NET REVENUE 2017 | | 3652 | 6160 | 9370 | 3083 | 13091 | 4008 | 13988 | 4283 | 14644 | 3666 | 8447 | -201 | 81829 |
| REVENUE PLAN 2018 | 6.00% | 16728 | 19404 | 27434 | 20341 | 40816 | 22081 | 44831 | 22081 | 48178 | 21412 | 30110 | 16728 | 330440 |
| EXPENSE PLAN 2018 | 3.00% | 12493 | 12510 | 18036 | 16669 | 26177 | 16647 | 29156 | 17066 | 31730 | 17030 | 22618 | 19462 | 238612 |
| NET REVENUE 2018 | | 4235 | 6894 | 9367 | 3782 | 14639 | 5433 | 16675 | 5016 | 16447 | 4382 | 7492 | 266 | 93628 |
| FIVE YEAR REVENUE | | 74691 | 86642 | 122494 | 90825 | 182247 | 98593 | 200173 | 98593 | 216111 | 95605 | 134445 | 74691 | 1474111 |
| FIVE YEAR EXPENSE | | 58531 | 59011 | 78078 | 78264 | 123478 | 78527 | 137531 | 80496 | 149671 | 80332 | 108680 | 77652 | 1116663 |
| FIVE YEAR NET | | 15760 | 27631 | 37416 | 12571 | 58770 | 20066 | 62642 | 18097 | 66440 | 15273 | 27785 | -2961 | 358458 |

NOTES:
Baseline for projections is 2013 plan.
Year 2014 expenses reduced to remove one time payoffs in plan for 2013